IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LUCRETIA MOSES McAFEE; JESSE MOSES; STARLENE MOSES JONES; DEBORAH JAN BATTIEST-TOMASI; BEVERLY BATTIEST NELSON; KATHERINE BATTIEST BROWN; and and LARRY BATTIEST,<br><br>    Plaintiffs,<br><br>vs.<br><br>DUKE ENERGY FIELD SERVICES, L.P.; JAMES M. VOEGELI; and EXXONMOBIL OIL CORPORATION,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case Number CIV-05-672-C<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Duke Energy Field Services, LP's Motion to Disqualify Plaintiffs' Counsel. Defendant ExxonMobil oil Corporation filed a Response in Support of the motion. Plaintiffs filed a Response and this Court conducted an evidentiary hearing on the matter. The Court's decision was announced at the conclusion of the evidentiary hearing and is memorialized herein.

Duke Energy Field Services, LP ("DEFS") seeks disqualification of Plaintiffs' counsel because Martin Stringer, an attorney, represented DEFS in the past and is now employed with the law firm representing Plaintiffs. DEFS asserts that during his past representation of it, Mr. Stringer obtained confidential information which is material to the issues in the present case. Plaintiffs argued that Mr. Stringer did not obtain any confidential information about DEFS and if he did it is not material to the case before the Court. Plaintiffs further

argue that even if the Court determines Mr. Stringer should be disqualified, he has been adequately screened from disclosing that information to any person at Plaintiffs' counsels' firm and therefore there is no need to disqualify counsel.[1]

As the parties recognize, this Court has adopted the Oklahoma Rules of Professional Conduct. See LCvR 83.6(b). Thus, this issue is governed by Rules 1.10(a) and 1.9(b).[2] Rule 1.9(b) states:

---

[1] As an initial matter, the Court notes there is some dispute regarding which party has the burden of proof in this matter. DEFS, relying on SLC Ltd. V v. Bradford Group West, Inc., 999 F.2d 464 (10th Cir. 1993), argues the burden is on Plaintiffs. Indeed in SLC the Circuit stated:

> the Model Rules shift from a per se disqualification rule, to "support a functional analysis of such conflicts of interest and oppose application of an irrebuttable presumption." [Smith v. Whatcott, 757 F.2d 1098] as 1101 n.2 [(10th Cir. 1985)]. Under this functional analysis, imputed disqualification of a law firm is determined on the facts of the particular situation and is driven in part by the extent to which the attorney involved had access to information about his former client. Thus, although the burden remains with the firm whose disqualification is sought, a firm is disqualified only when the attorney involved had actual knowledge of material information protected by Rules 1.6 and 1.9(b).

Id. at 468. Oklahoma seems to take the opposite approach. "[T]he barrier a party must surmount to secure the disqualification of his opponent's counsel is high." Hayes v. Central States Orthopedic Specialists, Inc., 2002 OK 30, ¶ 9, 51 P.3d 562, 565. Given the concerns about making disqualification motions for strategic reasons as well as the inherent difficulties in proving a negative, Oklahoma's approach seems more appropriate in placing the burden on the party raising the issue. However, because DEFS has presented evidence sufficient to carry the burden, whether or not it must carry it, the Court need not decide this issue.

[2] There was some evidence and argument that Mr. Stringer actually represented DEFS and therefore the question should be governed by Rule 1.9(a). The evidence at the hearing established that although Mr. Stringer represented DEFS while at the McKinney & Stringer law firm, that representation was on matters unrelated to those in the present case. This fact, along with the commentary to the Oklahoma Rule, indicates the issue is more properly resolved under Rule 1.9(b).

      b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

            (1) whose interests are materially adverse to that person; and
            (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

      unless the former client consents after consultation.

5 Okla. Stat. Ch. 1, App. 3-A, Rule 1.9(b). Rule 1.10(a) states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8, 1.9 or 2.2." 5 Okla. Stat. Ch. 1, App. 3-A, Rule 1.10(a). Thus, as an initial matter the Court must determine if Mr. Stringer would be disqualified from representing Plaintiffs under Rule 1.9(b). The rule can be broken into 4 elements: 1) Did Mr. Stringer's former firm represent DEFS? 2) Was the substance of that representation the same or substantially related to the substance of the present case? 3) Did Mr. Stringer acquire confidential information that is material to the present case? 4) Has DEFS consented to the representation?[3] There is no dispute about the first and fourth elements. It is clear that McKinney & Stringer, Mr. Stringer's prior law firm, represented DEFS in the past. It is also clear that DEFS does not consent to the representation, hence the present motion.

---

[3] DEFS and ExxonMobil argue the case should be evaluated under <u>SLC Ltd. V v. Bradford Group West, Inc.</u>, 999 F.2d 464 (10th Cir. 1993). Although Utah's rule of professional conduct which applied in that case is similar to the Oklahoma rule governing in this case and the elements set out by the circuit are similar, the case is not controlling on the issue, as there are differences in Utah's rule.

As for the second element, the question was hotly contested in the parties' briefs and at the evidentiary hearing. DEFS asserted there were two issues on which the McKinney & Stringer firm had acted that were substantially related[4] to the substance of the present case. First was the Drummond litigation; according to DEFS, that litigation raised claims against DEFS and ExxonMobil that are virtually identical to the claims raised by Plaintiffs here. Indeed, upon review of the complaint in the Drummond litigation the Court notes there are striking similarities. Thus, although the Drummond litigation involved a different parcel of land and different property owned by DEFS and/or ExxonMobil, the Court finds it was substantially related. The second issue raised by DEFS was the work of Donald K. Shandy on issues related to the acquisition of MobilExxon property by DEFS. Mr. Shandy was an attorney and director at the McKinney & Stringer law firm. During his employment, Mr. Shandy had several discussions with principals at DEFS regarding the purchase of property from ExxonMobil including the property involved in the present case. During the *in camera* proceedings at the hearing on the Motion to Disqualify, it became apparent that Mr. Shandy's work in this regard was substantially related to some of the issues involved in this case and if that work were known to Plaintiffs the knowledge would have a negative impact on

---

[4] The circuit has explained the issue as follows: "The merits of this disqualification motion depend on whether a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client. 'Substantiality is present if the factual contexts of the two representations are similar or related.'" Smith v. Whatcott, 757 F.2d 1098, 1100 (10th Cir. 1985) (superseded by rule on other grounds in SLC Ltd. V v. Bradford Group West, Inc., 999 F.2d 464, 468 (10th Cir. 1993)), quoting Trust Corp. of Montana v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir. 1983).

DEFS's case. Thus, the factual context of Mr. Shandy's representation of DEFS was similar or related to the factual context of the present case and the matters are therefore substantially related.

The inquiry then turns to whether Mr. Stringer acquired confidential information that is material to the issues in the present case. At the outset it should be noted that Mr. Stringer was the originating attorney for DEFS. He was the principal point of contact for DEFS at McKinney & Stringer and was the person responsible for initiating conflict checks within the firm when a new matter involving DEFS was opened.

The Drummond litigation is a close question. At the evidentiary hearing, Mr. Stringer testified that he obtained the complaint in the Drummond case in some fashion and called DEFS to let them know they had been sued. Mr. Stringer's testimony was that he then spent the remainder of the telephone conversation attempting to persuade DEFS to hire the McKinney & Stringer firm to represent it in that litigation. Mr. Stringer's time records demonstrate that this telephone call lasted one hour. Ultimately, Mr. Stringer was unsuccessful and DEFS hired another firm to represent it in the Drummond litigation. Mr. Stringer testified he could not recall that any confidential information passed during the telephone call but that he didn't think any could have as DEFS did not know until the phone call that it had been sued and he didn't know anything about the issues other than what he had learned from reading the complaint. Because the issues surrounding Mr. Shandy's work on behalf of DEFS are dispositive, it is unnecessary to resolve the questions surrounding the Drummond litigation.

As for the second issue, it is clear Mr. Stringer obtained confidential information about Mr. Shandy's work on the property acquisition. Mr. Shandy's work on this subject ultimately led to the creation of a memo and letter which outlined the nature of the discussions and what entity was responsible for accomplishing various tasks. Mr. Shandy recalled that Mr. Stringer had reviewed the memo and likely had reviewed the letter. Mr. Shandy testified that in his opinion the memo and letter contained confidential information. Mr. Stringer admitted that he had reviewed the memo but was uncertain whether he had reviewed the letter.[5] Mr. Shandy testified that he likely passed confidential information about the memo and other matters to Mr. Stringer as part of keeping Mr. Stringer informed about McKinney & Stringer's work on behalf of DEFS due to Mr. Stringer's position as the originating attorney for DEFS work. Indeed, Mr. Stringer's time records reflect a one hour internal conference regarding Mobil issues. Mr. Shandy testified that conference would be related to issues in this lawsuit. Weighing Mr. Stringer's assertion that he does not now remember what was discussed or whether he received any confidential information about DEFS against Mr. Shandy's assertion that he likely conveyed such information and that it would be the usual practice to convey those issues to Mr. Stringer, the Court finds the information was indeed passed to Mr. Stringer.

---

[5] Mr. Stringer's time record, entered at a time when the present issue could not have even been remotely considered, reflected he spent half an hour reviewing the memo. Given the memo's length, this amount of time strongly suggests Mr. Stringer also reviewed the letter. Mr. Stringer's time records also reflect he spent an additional 15 minutes reviewing a memo regarding indemnification. According to Mr. Shandy, considering the date of the entry, it is more likely than not that the indemnification issue was related to the acquisition of Mobil's property and, therefore, related to the issues involved in the present lawsuit.

In addition, during the in camera proceedings, Mr. Shandy identified a number of issues in the memo reviewed by Mr. Stringer which were factually connected to issues in the present litigation. Thus, it is clear that Mr. Stringer at one time had knowledge of confidential information about DEFS that is material to the issues in the present litigation. That Mr. Stringer has no present recollection of those confidential issues does not matter. Rule 1.9(b) speaks in the past tense, "the lawyer *had* acquired information." It matters not whether that information is presently available to Mr. Stringer; it only matters that he once was aware of the information. For these reasons, pursuant to Rule 1.9(b) Mr. Stringer would be disqualified from representing Plaintiffs in their case against DEFS.

The focus now turns to whether Mr. Stringer's disqualification should be imputed to the McAfee & Taft law firm where he is presently employed. As noted above, Rule 1.10(a) provides that when a member of a firm is disqualified pursuant to Rule 1.9, all members of that firm are likewise disqualified. In an attempt to avoid the impact of Rule 1.10(a), Plaintiffs argue that Mr. Stringer has been blocked from sharing any confidential information since his arrival at McAfee & Taft and therefore there is no need to disqualify the entire firm. The Court is not persuaded. Oklahoma has expressly declined to address whether screening is available as a mechanism for preventing the disqualification of a law firm. See Hayes, 2002 OK 30, ¶ 25, 51 at 569 ("We expressly decline to consider in this opinion whether the use of screening devices would be appropriate in cases involving *lawyers* who move to a firm that represents an opponent who the lawyers had represented."). Indeed, review of Rule 1.10 seems to clearly foreclose the adoption of screening. Once it is established that a member

of a firm is disqualified, the rule in no uncertain terms requires the disqualification of the remaining members of the firm. Thus, the Court is not persuaded that Oklahoma would permit screening under the facts of this case. However, as noted at the hearing, even assuming that such screening would be permitted, the procedures implemented were inadequate. As was made clear at the hearing, the screen consisted only of Mr. Stringer being instructed not to discuss the case with other members of the firm. While the Court does not in any way doubt Mr. Stringer's willingness and ability to honor his word, the failure to notify the other members of the firm, particularly those lawyers and staff persons working on the case, leaves too great a gap for the screen to be considered meaningful.

As set forth more fully herein, Defendant Duke Energy Field Services, LP's Motion to Disqualify Plaintiffs' Counsel (Dkt. No. 64) is GRANTED. The McAfee & Taft law firm is disqualified from representing Plaintiffs in this matter. New counsel should enter their appearance on behalf of Plaintiffs. Unless such an entry is made, or Plaintiffs notify the Court of their intent to proceed pro se, within 180 days of the date of this Order, this matter will be dismissed without prejudice. The Scheduling Order is STRICKEN pending a new status and scheduling conference to be set once appropriate appearance is made by the new representative. All pending motions are STRICKEN without prejudice to their refiling.

IT IS SO ORDERED this 25th day of January, 2006.

ROBIN J. CAUTHRON
United States District Judge